UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

STANLEY L. WHITE,

                Petitioner,                      Case No. 1:16-cv-867

v.                                         Honorable Janet T. Neff

THOMAS MACKIE,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Stanley L. White is presently incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility in Manistee, Michigan. Petitioner is serving concurrent sentences of 12 to 30 years on each of two counts of armed robbery, MICH. COMP. LAWS § 750.529, consecutive to a sentence of two years on one count of felony firearm MICH. COMP. LAWS § 750.227b(1), imposed by the Berrien County Circuit Court on April 30, 2012, after a jury convicted Petitioner of those offenses.[1] In his *pro se* petition, Petitioner raises three grounds for relief, as follows:

I.        Appellate attorney, Daniel J. Rust, rendered ineffective assistance in failing to raise on Defendant's appeal as of right argument II and argument III that

---

[1] Petitioner was also convicted of one count of interference with an electronic communication, MICH. COMP. LAWS § 750.540, but he was sentenced to time served for that count. Petitioner had already served his sentence before he entered the custody of the Michigan Department of Corrections. At the time Petitioner filed his petition, therefore, he had already served the entire term of the consecutive sentence on the felony firearm count as well as the concurrent sentence on the interference with an electronic communication count. That does not preclude Petitioner from challenging the consecutive felony firearm conviction and sentence, *Garlotte v. Fordice*, 515 U.S. 39, 47 (1995), but it does preclude Petitioner from challenging the concurrent interference conviction and sentence, *Bowling v. White*, No. 15-6318, 2017WL2471262 at *6 n.5 (6th Cir. June 8, 2017).

Defendant presents in his Motion for Relief from Judgement [sic] where fact and law supports the relief.

II.     Defendant was unable to intelligently challenge for cause, nor intelligently exercise peremptory challenges, and so was deprived of both the state and federal constitutional right to an impartial jury, since counsel refused to afford defendant his MCR 2.510(C)(1)(c) due process right to examine the jurors' qualification and personable [sic] history questionnaires. Counsel also impeded the right to an impartial jury by refusing to *voir dire* prospective jurors regarding the duress defense, even though a negative answer would have produced a defense challenge, and, if the court did not excuse the jurors, the exercise of a defense peremptory challenge.

III.    Defendant's jury trial was "fundamentally unfair" because the prosecutor's opening and closing arguments rests [sic] upon material fact not in evidence, to-wit, that defendant confessed to both the prosecutor and the defense that the defendant made no confession[,] that the latter posted no objections to that argument not upon fact, nor request cautionary instruction, its prima facie proofs that he conspired with prosecutor to ignore that impermissible argument.

(Pet., ECF No.1, PageID.8-13.)  Respondent has filed an answer to the petition (ECF No. 7) stating that the grounds should be denied because of procedural default and lack of merit. Upon review and applying the AEDPA standards, I find that Petitioner's habeas issues lack merit. Accordingly, I recommend that the petition be denied.

## Discussion

I.     Factual allegations

On the morning of July 19, 2011, three men burst into Napier Gold and Silver on 1261 Napier Avenue in Benton Township, Berrien County, Michigan.  (Trial Tr. I, ECF No. 8-2, PageID.304-308.)[2]  The shop owners, Robert and Linda Wagner, were the only persons present.

---

[2] The Rule 5 materials include several transcripts of the trial court proceedings.  The transcripts shall be referenced as follows:

| | |
|---|---|
| March 27, 2012 Trial Transcript  (Volume 1) | (Trial Tr. I,  ECF No. 8-2, PageID.__) |
| March 28, 2012 Trial Transcript  (Volume 2) | (Trial Tr. II,  ECF No. 8-3, PageID.__) |
| March 29, 2012 Trial Transcript  (Volume 3) | (Trial Tr. III,  ECF No. 8-4, PageID.__) |
| April 30, 2012 Sentencing Transcript | (Sentencing Tr., ECF No. 8-5, PageID.__). |

(*Id*., PageID.305, 348.)  One man shouted instructions and held Mr. Wagner at gunpoint; another bound Mr. Wagner with a zip tie, then emptied the jewelry from the store's display cases and also ripped the landline telephone out when it rang during the robbery; and the third man held Mrs. Wagner at gunpoint, bound her with a zip tie, and emptied the contents of the shop safe into a black garbage bag.  (*Id*., PageID.306-307, 309-310, 349-364.)

The three men exited the store and hopped into a waiting Lincoln Navigator driven by a fourth man.  (*Id*., PageID. 368.)  The Wagners retrieved their own guns and followed after the robbers; Mr. Wagner fired three shots at the vehicle as it left the parking lot.  (*Id*., PageID.330-331, 365.)  He missed.  (*Id*., PageID.339.)

Blake Florin was in his vehicle, waiting at the light near the Wagners' shop when he heard three shots and then saw the Lincoln Navigator tear through the intersection.  (*Id*., PageID.411-412.)  He saw Mr. Wagner with a gun looking around frantically.  (*Id*., PageID.413.)  Mr. Florin figured he should follow the Navigator.  (*Id*.)  He lost them on Interstate 94.  (*Id*., PageID.415.)  He estimates they were driving 100 miles per hour or faster.  (*Id*.)  The information Mr. Florin provided assisted law enforcement in locating and stopping the Lincoln Navigator on the highway.

When the police stopped the Navigator, it was occupied by Petitioner, Michael Barner, and Quentin Willford.  Mr. Willford provided testimony that corroborated the Wagners' description of the events.  Mr. Willford was the driver. (Trial Tr. III, ECF No. 8-4, PageID.672.)  He remained in the car while Petitioner, Michael Barner, and "Old School" robbed the shop.  (*Id*., PageID.666-674.)  The four conspirators went from the robbery site to the McDonald's in Bridgman, Michigan.  (*Id*., PageID.675.)  There, they met up with Awal and Twan in another vehicle.  (*Id*., PageID.676-678.)  They transferred the stolen goods to the other vehicle.  (*Id*.)  "Old

School," Awal and Twan departed in that vehicle.  (*Id.*)  Petitioner, Barner, and Willford left in the Navigator.  They were apprehended moments later.

Petitioner testified as well.  He told the jury that he had entered the shop to pawn a gold ring.  (*Id.*, PageID.711-712.)  He entered alone, but Barner and "Old School" must have followed him in, because Barner pulled his gun on Mr. Wagner and "Old School" threatened Mrs. Wagner with his gun.  (*Id.*, PageID.712-714.)  Petitioner reported that he tried to leave, but Barner pointed the weapon at Petitioner; so, Petitioner came back and emptied the shop cases into a black bag.  (*Id.*, PageID.714-715.)  Petitioner claimed that "Old School" bound Mr. and Mrs. Wagner with the zip ties.  (*Id.*, PageID.716-717.)  Petitioner continued to empty the cases until Barner ordered everyone back to the vehicle.  (*Id.*, PageID.718.)  Petitioner disclaimed any knowledge of the other vehicle.  (*Id.*, PageId.720.)  As far as he knew, "Old School" simply walked off with the proceeds of the robbery when they arrived at McDonald's.  (*Id.*, PageID.721.)  Petitioner's testimony was not consistent with the version of events he provided during recorded interviews with police.  (*Id.*, PageID.727-769.)  In the recorded interviews, which were played for the jury, he acknowledged to detectives that he was in the store and had cleaned out the cases into a bag. He never mentioned anything about doing so under duress.

The jury deliberated for about an hour before finding Petitioner guilty of all charges.

With the assistance of counsel, Petitioner directly appealed his convictions to the Michigan Court of Appeals, raising one issue: he challenged the sufficiency of the evidence with regard to the felony firearm charge.  By unpublished opinion issued August 8, 2013, the court of appeals affirmed the trial court.  (Mich. Ct. App. Op., ECF No. 8-6, PageID.860-862.)  Petitioner

applied for leave to appeal to the Michigan Supreme Court. That court denied leave by order entered December 23, 2013. (Mich. Ord., ECF No. 8-7, PageID.912.)

Petitioner then filed a habeas petition in this Court, *White v. McKee*, No. 1:14-cv-921 (W.D. Mich.), raising the sufficiency issue. That petition was dismissed without prejudice to permit Petitioner to raise three new issues in the state courts on post-conviction review.

Petitioner proceeded to file a motion for relief from judgment in the Berrien County Circuit Court raising the three issues he has raised in his present habeas petition. (Mot. and Supporting Memo., ECF No. 8-8, PageID.955-990.) The circuit court denied relief by order entered October 13, 2014. (Berrien Cnty. Cir. Ct. Ord., ECF No. 8-9, PageID.991-996.) The Michigan Court of Appeals and the Michigan Supreme Court refused to grant leave to appeal the circuit court's decision by orders entered May 20, 2015, and May 2, 2016, respectively. (Mich. Ct. App. Ord., ECF No. 8-10, PageID.997; Mich. Ord., ECF No. 8-11, PageID.1039.) Petitioner then returned to this Court.

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Procedural default

Respondent argues that review of habeas issues II and III is barred by Petitioner's procedural default. "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 340 (2010). If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks v. Straub,* 377 F.3d 538, 551-52 (6th Cir. 2004). In this instance, Petitioner claims that the cause for his default was the ineffective assistance of his appellate counsel (which is also habeas issue I). Because determining whether appellate counsel's assistance was effective requires an analysis of resulting

prejudice,[3] evaluating Respondent's claim of procedural default necessarily involves consideration of the merits of all of Petitioner's claims.

Federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Because the Court will be required to consider the merits of the issues anyway, the procedural default issue raises more questions than the case on the merits. Under these circumstances, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

IV.     *Voir dire*

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury . . . and to have the assistance of counsel for his defense." U.S. CONST. amend. VI. *Voir dire* plays an important role in ensuring the impartiality of the jury selected:

---

[3] The Supreme Court has established a two-prong test by which to evaluate claims of ineffective assistance of appellate counsel. To establish a claim of ineffective assistance of appellate counsel, the petitioner must prove: first, that counsel's performance was objectively unreasonable; and second, that counsel's deficient performance prejudiced the defendant, i.e., but for counsel's objectively unreasonable performance, there is a reasonable probability that the petitioner would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).

It is true that "[v]oir dire 'is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion.'" *Ristaino v. Ross*, 424 U.S. 589, 594 (1976) (quoting *Connors v. United States*, 158 U.S. 408, 413 (1895)). The Constitution, after all, does not dictate a catechism for *voir dire*, but only that the defendant be afforded an impartial jury. Even so, part of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors. *Dennis v. United States*, 339 U.S. 162, 171-172 (1950); *Morford v. United States*, 339 U.S. 258, 259 (1950). "*Voir dire* plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) (plurality opinion). Hence, "[t]he exercise of [the trial court's] discretion, and the restriction upon inquiries at the request of counsel, [are] subject to the essential demands of fairness." *Aldridge v. United States*, 283 U.S. 308, 310 (1931).

*Morgan v. Illinois*, 504 U.S. 719, 729-730 (1992) (parallel citations and footnote omitted).

"Should counsel perform so deficiently during the jury selection process so as to deny the defendant his Sixth Amendment right to an impartial jury, the defendant may be entitled to relief on the basis of ineffective assistance of counsel." *Hanna v. Ishee*, 694 F.3d 596, 616 (6th Cir. 2012) (citing *Holder v. Palmer*, 588 F.3d 328, 338 (6th Cir. 2009)).

Nonetheless, "[n]either due process nor the Sixth Amendment entitles a defendant to ask prospective jurors every question that might prove helpful." *Bedford v. Collins*, 567 F.3d 225, 232 (6th Cir. 2009) (citing *Mu'Min v. Virginia*, 500 U.S. 415, 425-26 (1991)). Indeed, the trial court should not permit the inquiry into partiality to devolve into a preview of the case through *voir dire*. *Id*. *Voir dire* is not intended to permit the defendant to map "every alley and side street of each juror's mind, a level of detail that the Constitution does not entitle criminal defendants (or the prosecution) to obtain." *Id*.

In his second ground for habeas relief, Petitioner claims his counsel refused to permit Petitioner to examine the juror personal history questionnaires and refused to pursue *voir dire* questions regarding the duress defense. Thus, Petitioner claims that he was denied an

impartial jury as required by the Sixth Amendment and that the denial was a result of ineffective

assistance of counsel. The Berrien County Circuit Court rejected both claims:

> Defendant's brief does not make the basis for his second claim of relief entirely clear. There is no allegation that this Court withheld juror questionnaires from Defendant and his counsel. The transcripts and record are also devoid of any mention of juror questionnaires. It appears that Defendant is claiming that his counsel received the questionnaires but refused to allow Defendant to examine them personally, thus constituting ineffective assistance of counsel. Defendant further appears to argue that his counsel was also ineffective for failing to question jurors during voir dire about a duress defense.

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden to prove otherwise. *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001). This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v Barnett*, 163 Mich App 331, 338; 414 NW2d 378 (1987). In order to prove ineffective assistance of counsel, the defendant must satisfy a two-pronged test. The first prong requires the defendant to show that the counsel's performance was deficient. *Strickland v. Washington,* 466 US 668, 687 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The defendant must show that counsel's performance was below an objective standard of reasonableness under prevailing professional norms. *People v Stanaway,* 446 Mich 643, 687; 521 NW2d 557, 579 (1994).

> The second prong requires the defendant to show that the deficient performance prejudiced the defendant. *Strickland, supra* at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The defendant must show that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Stanmvay, supra* at 687-688.

> Defendant is correct that he is permitted to examine juror questionnaires under MCR 2.510(C)(l)(c). However, Defendant has not set forth any specific information that would be contained in either a juror personal history questionnaire or a juror qualification questionnaire that is relevant to his case but was not addressed by either the Court or the attorneys in voir dire. Therefore, even assuming arguendo that Defendant can satisfy the first prong of the *Strickland* test, he has not established that there is a reasonable probability that the result of the trial would have been different had he been able to personally review the juror questionnaires.

> Defendant has also not established that his trial counsel was ineffective for failing to ask jurors questions regarding a duress defense. An

attorney's decisions relating to the selection of jurors generally involve matters of trial strategy which courts normally decline to evaluate with the benefit of hindsight. *People v Johnson,* 245 Mich App 243, 259; 631 NW2d 1 (2001). The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel. *People v Stewart,* 219 Mich App 38, 42; 555 NW2d 715 (1996). Prior to defense counsel's opportunity to question the potential jurors, all of the jurors agreed to apply the law as the Court gave it to them, even if they disagreed with it. (Tr I, 42). Further, Defendant has not set forth any specific questions that counsel should have asked. Nor has Defendant presented any evidence that any jurors had trouble understanding or applying the instrnctions on duress to the facts of this case. Therefore, Defendant has failed to satisfy both of the two prongs in the *Strickland* test.

(Berrien Cnty. Cir. Ct. Ord., ECF No. 8-9, PageID.993-995.)

The trial court addressed Petitioner's challenge only with respect to the effectiveness of counsel's assistance, not with respect to the partiality of the jurors that found Petitioner guilty. The trial court's decision to bypass the bias issue is understandable. Petitioner failed to identify anything in the record that might indicate the presence of juror bias or even a suspicion of juror bias. The trial court noted that the jurors had all agreed to apply the law as the court gave it to them. Moreover, each juror swore to render the verdict only on the evidence introduced. (Trial Tr. I, ECF No. 8-2, PageID.264-265.) Petitioner bears the burden to establish the existence of juror bias which caused him to suffer actual prejudice. *See Smith v. Phillips*, 455 U.S. 209, 215–17 (1982) (petitioner bears the burden to demonstrate that he suffered "actual bias" as a result of juror misconduct); *United States v. Corrado*, 227 F.3d 528, 536 (6th Cir. 2000); *Sheppard v. Bagley*, 657 F.3d 338, 348–49 (6th Cir. 2011) (Batchelder, J. concurring). Petitioner offers nothing substantive to call into question the jurors' impartiality. Instead, he focuses on alleged failures in the *voir dire* process.

First, Petitioner argues the *voir dire* process was flawed because counsel denied Petitioner the opportunity to review the juror personal history questionnaires. Petitioner claims the Michigan Court Rules entitle him to view the questionnaires. Whether state law affords

Petitioner that right is immaterial on habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

There is no federal constitutional requirement that courts use or jurors answer juror questionnaires. "The Constitution, after all, does not dictate a catechism for *voir dire*[.]" *Morgan*, 504 U.S. at 729. "The decision to use—or not use—jury questionnaires is another issue committed to the trial court's discretion." *Postelle v. Royal*, No. CIV-12-1110-F, 2016 WL 4597629 at *16 (W.D. Okla. Sep. 2, 2016). Moreover, there does not appear to be a constitutional entitlement for the criminal defendant to see the questionnaires if the trial court does use them. As the Seventh Circuit Court of Appeals recognized, "[t]hose questionnaires contain prospective jurors' home addresses and other personal information . . . [i]f these completed judicial jury forms were released to defendants generally there would exist the possibility of substantial abuse of the information the forms contain which could have serious consequences for individual jurors and the system." *United States v. Davenport*, 824 F.2d 1511, 1515 (7th Cir. 1987) (footnote omitted).[4] Although Michigan's juror personal history questionnaire does not include address information, it includes other personal information that would undoubtedly be considered confidential, such as the

---

[4] The *Davenport* court considered whether juror questionnaires should be provided to a federal criminal defendant under the Jury Selection and Service Act, 28 U.S.C. §§ 1861-1869, for the purpose of challenging the systematic exclusion of certain groups from the pool of potential jurors. *Davenport*, 824 F.2d at 1514.

prospective juror's employer's name and address, spouse's name, spouse's employer, and the number of children living at the juror's home. *See* Michigan Supreme Court Administrative Office Juror Personal History Questionnaire Form, MC 321b (3/09).

Accordingly, Petitioner's constitutional complaint regarding his counsel's refusal to permit Petitioner to examine the juror questionnaires is, as the trial court recognized, nothing more than an ineffective assistance of counsel claim. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen*

*v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The trial court expressly relied upon the *Strickland* standard.  Thus, the court applied clearly established federal law in deciding Petitioner's challenge.  Moreover, the state court applied the standard reasonably, resolving the matter at the second prong, determining that even if counsel's performance fell short, Petitioner had failed to establish prejudice.  "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'"  *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Strickland*, 466 U.S. at 697.

The trial court's factual determinations regarding the lack of prejudice are well-supported on this record, principally because Petitioner fails to identify any hint of juror bias.  The trial court conducted a probing *voir dire* to uncover any potential bias.  (Trial Tr. I, ECF No. 8-2, PageID.187-261.)  Jurors were excused for cause and on peremptory challenge by the prosecution and defense.  The trial court's conclusion that Petitioner had failed to demonstrate prejudice from counsel's refusal to permit Petitioner to examine the juror personal history questionnaires is not unreasonable.  Accordingly, Petitioner is not entitled to habeas relief.

Petitioner's contention that counsel was ineffective for failing to question the jurors about the duress defense fares no better. The trial court rejected the claim under both prongs of the *Strickland* analysis. The trial court concluded first that an attorney's approach to *voir dire* involved matters of strategy which courts are loathe to second-guess, and second that Petitioner had failed to demonstrate that asking questions about duress during *voir dire* would have likely changed the result. (Berrien Cnty. Cir. Ct. Ord., ECF No. 8-9, PageID.994-995.)

The trial court's determination with respect to the first prong is consistent with clearly established federal law. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland.* 466 U.S. at 689. As noted above, the defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. "Counsel's actions during *voir dire* are presumed to be matters of trial strategy." *Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001); *see also Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001) ("An attorney's actions during *voir dire* are considered to be matters of trial strategy."); *Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) (court found reasonable the state court's conclusion that counsel's failure to pursue a particular inquiry during *voir dire* was strategic and entitled to deference, even if the strategy was questionable).

It is not difficult to conceive of a strategic reason to exclude inquiries regarding the duress defense during *voir dire*. To raise the spectre of the duress defense at that stage of the proceeding would effectively compel Petitioner to testify before knowing how the prosecution's case would come in. It is important to keep in mind that neither Mr. nor Mrs. Wagner identified Petitioner as one of the three men in their store. Only Petitioner's "admissions" to the police and the testimony of Quentin Willford placed Petitioner there. It may have been improvident to

commit to a duress defense if the Wagners' uncertainty and a change of heart by Willford might have provided a sufficient reasonable doubt as to whether Petitioner was even in the store. That may have also been the reason that Petitioner's counsel deferred his opening arguments until it was time to present Petitioner's proofs: it left all of the options open.

It is also possible that the trial court might not have permitted that sort of detailed preview of the case during *voir dire*. *Bedford*, 567 F.3d at 232. The Sixth Circuit has affirmed a trial court's refusal to delve so deeply into the specifics of the case by posing *voir dire* questions regarding the defense of duress. *United States v. Hernandez*, 232 F. App'x 561, 564-65 (6th Cir. 2007). The trial court in *Hernandez* concluded the jurors' commitment to follow the court's instructions regarding the law was sufficient with regard to the duress defense. *Id*. Petitioner's counsel might have reasonably concluded likewise. In any event, the trial court's conclusion that foregoing *voir dire* questions regarding the duress defense was reasonable trial strategy is not unreasonable on this record.

The trial court's determination regarding the lack of prejudice is also supported by the record. Petitioner has not identified what questions counsel might have presented during *voir dire* that would have ferreted out hidden bias against the duress defense. Indeed, it is difficult to conceive of how or why a potential juror might have bias against the duress defense. The concept that underlies the duress defense, being compelled to do something because one has been put in fear of harm, was already before the jury as an element of the armed robbery counts. There is nothing in the record to suggest that the jurors had any difficulty in understanding and applying the instructions regarding the duress defense. Accordingly, Petitioner has failed to demonstrate that the state courts' resolution of his claim is contrary to or inconsistent with clearly established

federal law or involved an unreasonable determination of facts based on the record before the court. He is not entitled to habeas relief for this claim.

## V. Prosecutorial misconduct

Petitioner next contends that the prosecutor argued material facts not in evidence during his opening and closing arguments and that his counsel rendered ineffective assistance because he failed to object. Petitioner identifies three specific instances where the prosecutor argued facts not in evidence:

1. During opening argument the prosecutor stated: "They asked him who's idea was this? His story was I don't—wasn't mine. I don't know whose idea it was. So they continued to talk to him. He finally admits that he was involved." (Trial Tr. I, ECF No. 8-2, PageID.297.)

2. During opening argument the prosecutor also stated: "And he participated in this. It was his job to get the attention of the people in the store. It was Stanley White's job to get the attention of the people in the store. And then Old School and Michael Barner came in after him. Questin Willford was the driver in the vehicle. So now he's admitting to detectives that he was in fact involved in this. He did in fact go into that store, which is not what he had said in his previous statement. And he's admitted to going into the store with the intention to rob these people." (*Id.*, PageID.297-298.)

3. During closing argument the prosecutor stated: "And you wouldn't expect us to find their DNA and fingerprints. Why bring that up even? His client admits to being there. Why does it matter if we don't have any DNA or fingerprints? It's desperation, ladies and gentlemen. The defendant has confessed. He's confessed to his part in this armed robbery." (Trial Tr. III, ECF No. 8-4, PageID.812-813.)

Petitioner claims he never admitted or confessed anything, so the prosecutor's argument rendered his trial fundamentally unfair.

To be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he

touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). Prosecutors "must be given leeway to argue reasonable inferences from the evidence." *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)).

In evaluating the impact of the prosecutor's alleged misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (internal quotation omitted).

The trial court rejected Petitioner's prosecutorial misconduct arguments:

In his third claim for relief, Defendant argues that the prosecutor made claims in her opening and closing statements that Defendant had confessed to, his involvement in this crime in direct contradiction to the evidence presented at trial. Defendant argues that this prosecutorial misconduct denied him of his right to a fair trial, and the fact that defense counsel did not object is prima facie evidence that he conspired with the prosecutor to ignore this impermissible argument.

Defendant specifically points to two instances in the prosecutors opening statement. The prosecutor stated, "[h]e finally admits that he was involved," and "he's admitted to going into the store with the intention to rob these people." (Tr I, 121-122). Further, Defendant points to one more instance in the prosecutor's closing statement, where she stated, "[t]he defendant has confessed. He's confessed to his part in this armed robbery." (Tr III, 636-637).

Despite Defendant's contention, all of these statements are supported by the testimony of Detective Jeffrey Farrone. On direct examination detective Farrone testified that he and Detective Brian Smit interviewed Defendant at the Benton Township police Department. (Tr II, 359). Farrone testified that Defendant admitted to entering the store and placing merchandise in a black garbage bag while two accomplices held the two victims at gun point. (Tr II, 379). Defendant further admitted that he had put the merchandise in the bag because that was his "assignment." (Tr II, 379).

Given that all of the prosecutor's statements were backed by Farrone's testimony, Defendant's claim of prosecutorial misconduct is wholly without merit. Further, Defendant's claim that defense counsel conspired with the prosecutor by not objecting to the prosecutor's statements also fails because it is completely unsupported by the evidence.

(Berrien Cnty. Cir. Ct. Ord., ECF No. 8-9, PageID.995-996.)

The trial court's factual determinations regarding the content of the record are unassailable. Petitioner informed the detectives of his involvement in the armed robbery. Detective Farrone so testified, and the jury watched the videotapes of the interviews. Moreover, Petitioner's defense of duress acknowledges his role in the armed robbery. Petitioner's argument is patently frivolous. He is not entitled to habeas relief on his claims of prosecutorial misconduct.

VI.     Ineffective assistance of appellate counsel

Petitioner challenges his appellate counsel's assistance as ineffective because counsel failed to raise the *voir dire* and prosecutorial misconduct arguments on appeal. An

appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal).

The trial court resolved Petitioner's claims as follows:

> In his final claim for relief, Defendant argues that his appellate counsel was ineffective for not raising the previous two claims on appeal. Appellate counsel is not required to raise every claim of "arguable legal merit on appeal." *Reed, supra* at 387. Rather, "appellate counsel's decision to winnow out weaker arguments and focus on those more likely to prevail is not evidence of ineffective assistance." *Id.* at 391. Because, as set forth above, this Court finds Defendant's previous two claims to be meritless, this Court also finds that it was reasonable strategy for appellate counsel to exclude these claims from Defendant's appeal. Therefore, Defendant cannot establish that appellate counsel's performance fell below an objective standard of reasonableness as required by *Strickland*.

(Berrien Cnty. Cir. Ct. Ord., ECF No. 8-9, PageID.996.)

The trial court's analysis and conclusions are entirely consistent with clearly established federal law. For the reasons set forth in §§ IV and V, *supra*, the claims appellate counsel failed to raise were without merit. Counsel's failure to raise a meritless issue does not constitute ineffective assistance of counsel. *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'") "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Petitioner is not entitled to habeas relief.

### Certificate of Appealability

Even though I have concluded that Petitioner's habeas petition should be denied, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In

applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's denial of Petitioner's claims would be debatable or wrong.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated: September 18, 2017              /s/ Ellen S. Carmody
                                             Ellen S. Carmody
                                             United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).